IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

William A White
 Plaintiff

v.                                    Case No: 1:22-cv-02405-TWP-TAB

Robert K Decker, et al
 Defendants

FILED
04/28/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

RESPONSE TO DEFENDANT DECKER'S MOTION FOR A PROTECTIVE ORDER
(Doc 16)

Comes Now the Plaintiff, William A. White, and, I hereby make the following Response to Defendant Robert K Decker's Motion For A Protective Order (Doc 16):

1) Defendant Robert K Decker, who has not appeared, has filed a document styled "Defendant's Motion For A Protective Order." Doc 16. I have previously moved to strike this document as Decker is not before the Court and has not served it. Doc 18. Out of an abundance of caution, I now also address this motion on its merits.

2) In Doc 16 para 5, Decker makes the false statement that "Mr. White has a propensity to file slanderous and defamatory pleadings within the courts. That is why he was on a two-year ban nationwide." I am under a two-year filing restriction in the Southern District of Illinois. White v. United

-1-

States 2021 US Dist LEXIS 183954 (SD Ill 2021); White v. Collis 2021 US Dist LEXIS 183941 (SD Ill 2021). The restriction is not based on "slanderous and defamatory pleadings" and is limited to the Southern District of Illinois. White v. United States; Collis. That, before even appearing, Decker has begun making false statements to mislead this Court is a concern.

3) More concerning is that Decker appears to have attempted to make his false statements under oath. As a matter of law, "statements made on 'information and belief' are not admissible for their truth." USA Gymnastics v. Liberty Ins. Underwriters, Inc. 27 F4th 499 (7th Cir 2022) citing 10B Wright & Miller, Federal Practice And Procedure Civil §2738 (4th ed 2021). But, its not clear that Decker knows this. As such, this may be another attempted violation of 18USC §1623, the crime that got Decker into this mess. Because there is a non-negligible chance that Decker may still be prosecuted for the crimes described in the Complaint, Decker may be well-advised to exercise his Due Process rights including his right to remain silent.

4) The essence of Decker's complaint is that "some of the statements in the original complaint are slanderous and defamatory to the defendant." Doc 16, para 2. Decker also asserts that these statements are "defamatory and slanderous to the fact they are incorrect and false." Doc 16, para 2. Decker does not identify which statements he objects to.

5) The Complaint makes the following statements about Decker, and I explain the basis of my knowledge of each:
  a) Decker is a convicted sex offender. Doc 1, para 11. This is a matter of public

record, including United States v. Julian 427 F3d 471 (7th Cir 2005) ("Decker also shared in common with Julian a sexual interest in young boys; both men, in fact, had been previously convicted of child molestation,") Decker v. Fed. Bureau Of Prisons 2014 US Dist LEXIS 215801 (SD Ill 2014) (Decker's pre-sentence report "disclosed an arrest or conviction for enticement of a child l relative under the age of sixteen."), and, documents Decker has shown me regarding a New Jersey state conviction for molesting his young son. These public records are admissible under Fed. R. Evid. 201, Decker pled guilty to them, and, preclusion bars him from relitigating them here. See, e.g. Matrix IV, Inc. v. Am Nat'l Bank & Tr Co of Chi 649 F 3d 539 (7th Cir 2011);

b) Decker is a drug dealer. Docl para 11. This is also a matter of public record. United States v. Decker 832 Fed Appx 639 (11th Cir 2020);

c) Decker is a federal informant. Docl para 11-12. This is also a matter of public record, as Decker has attested to this under oath. Decker v. United States 2021 US Dist 222128 (SDFl 2021) (complaining that counsel "induced me to ... cooperate with the government.") also, see, e.g., Julian (referencing Decker's trial testimony);

d) Decker committed the (so far) uncharged offense of knowingly filing a false sworn declaration in Decker v. Lukens SD Ind Case No 18-cv-0185-WTL-MJO. Docl para 11 Specifically, Decker asked me to prepare a declaration stating that he was indigent in March 2018 and thus unable to purchase stamps with which to submit a BP-10 remedy, while Federal Correctional Institution ("FCI") - Terre Haute Unit Manager Todd Royer refused him indigent stamps. In January 2019, Decker told me this was false and that he had had funds on his account with which he could buy stamps. My testimony, the record in Lukens, Decker's commissary records and the records of the US Attorney's Office ("USAO") for the Southern District of Indiana will demonstrate this;

e) Decker committed the (so far) uncharged offense of assaulting a witness in

-3-

retaliation for statements made to federal prosecutors. Doc1 para 24-30, 38, 40, 46, 48. Decker has pled guilty to the fact of the assault in a prison disciplinary proceeding, establishing it as fact for purposes of this proceeding. Heck v. Humphrey 512 US 477 (1994). The only question is motive, which Decker has spent years proclaiming to anyone who will listen to him - except federal agents investigating the incident. Further, what other motive could Decker have had for assaulting me - an intent he developed after being confronted with my statements in Lukens (or, possibly, Decker v. Baez 2021 US Dist LEXIS 64837 (SD Ind 2021); it is not 100% clear to me in which proceeding the deposition Decker described to Alameti was taken) and before I arrived at FCI-Terre Haute?

6) As the legal bases of his motion, Decker cites to Fed. R. Civ. P. 26(c)(1) and 5 USC §552a(b)(1). Fed. R. Civ. P. 26(c)(1) governs "a party or any person from whom discovery is sought." Because no discovery is being sought from Decker, he may not avail himself of this rule. 5 USC §552a(b)(1) is a section of the Privacy Act which applies to federal agencies. As neither I nor the Court am an "agency," this is not applicable either.

7) What Decker really wants from the Court is a seal order. Doc16 para6. To obtain one, he must make more than "general statements" about what he wants sealed. Baxter Int'l Inc v. Abbott Labs 297 F3d 544 (7th Cir 2002). He must specify the information he wants sealed and "analyze the appropriate legal criteria" regarding them. Baxter citing Composite Marine Propellers, Inc v. Van Der Woude 962 F2d 1263 (7th Cir 1992). Then, he must overcome both the common law right of public access to judicial proceedings and the protections of US Const Amend I.

-4-

Nixon v. Warner Communications Inc 435 US 589 (1978) (common law right); United States v. Peters 754 F2d 753 (7th Cir 1985) (US Const Amend I); In Re: Continental Ill Sec Litig 732 F2d 1302 (7th Cir 1984) (US Const Amend I); see also, United States v. Corbitt 879 F2d 224 (7th Cir 1989) (discussion).

8) Under the common law, there is a "strong presumption" in favor of public access to materials presented in open court. Nixon. A Court may "deny access where its records would be used for improper purposes." Nixon; United States v. Edwards 672 F2d 1289 (7th Cir 1982). In civil matters, "[I]nformation that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." USA v. Maurice Foster citing Baxter (Foster 564 F3d 852 (7th Cir 2009)). The names of government informants and unindicted co-conspirators, once their statements are admitted into evidence, may not be sealed. United States v. Ladd 218 F3d 701 (7th Cir 2000). And, while litigants may not like it when personal information is discussed on the public record, "when these things are vital to claims made in litigation, they must be revealed." Baxter citing Union Oil Co. v. Leavell 220 F3d 562 (7th Cir 2000).

9) In evaluating the effect of a seal order on the public's US Const Amend I right of access to judicial proceedings, the court applies a two-prong test. United States v. Peters 754 F2d 753 (7th Cir 1985); Press-Enterprise Co v. Superior Court 478 US 1 (1986); In Re: Continental Ill. First, the Court considers whether the place and process have been historically open to the press and public. Press-Enterprise. Second, the Court asks whether public access plays a significant positive role in the functioning of the particular process in question. Press-Enterprise.

10) Decker is currently housed at the United States Penitentiary ("USP")-Marion Communications Management Unit ("CMU"). See, e.g., Decker v. Federal Bureau Of Prisons, 2023 US Dist LEXIS 4781 (SD Ind 2023). In this unit, communications between inmates and the outside world are highly scrutinized. See, e.g., BOP Program Statement ("PS") 5214.02 "Communication Management Units". Decker is concerned that other inmates may obtain access to the public court record in this matter and assault him - as he assaulted me. Doc 16 para 2-3. However, CMU inmates have no access to PACER or the public docket, and, CMU staff will not allow another inmate's legal papers into CMU. See, e.g., BOP PS 5270.09 "Inmate Discipline Program" (barring one inmate from possessing another inmate's legal papers). And, most of the negative information about Decker is available in court orders published on the LEXIS-NEXIS database available to inmates. Sealing the record in this matter will not affect USP-Marion CMU inmates' access to the facts about Decker.

11) While Decker may not like who he is and what he has done with his life, referencing other courts' findings about Decker, their records, and, prior statements he has made under oath is not "slanderous" or "defamatory". See, e.g., Fin Fiduciaries LLC v. Gannett Co, 46 F4th 654 (7th Cir 2022) (statements about the public record and statements which are substantially true are not defamatory under (Wisconsin law); Pack v. Middlebury Cmty Sch, 990 F3d 1013 (7th Cir 2021) (same for Indiana). Decker does not (and cannot) dispute that he is the party referenced in these records. Now, there are two allegations of uncharged crimes: one of violating 18 USC § 1623 and one of violating 18 USC § 1512(a)(2). And, these allegations, when a party is unable to challenge them, may be the basis of a seal order. Corbitt. But here, if Decker will just appear and answer, he will have a full opportunity to challenge them, insofar as he is not Heck-barred. And, these allegations are "vital" to my claims - both against Decker and the United States.

12.) Decker is here accused of battery, of causing - in part - the guard B. Calloway to batter me, and, intentional infliction of emotional distress by first causing - in part - me to be placed in the FCI-Terre Haute CMU Special Housing Unit ("SHU"), and, then, berating me with threats and insults while I was so restrained. Decker's anger at me for reporting his false statements under oath to the US Attorney was the motive for the battery, a battery which Decker has admitted to in prison disciplinary proceedings. Evidence of motive is separate from evidence of bad character and is admissible under Fed R.Evid. 404(b)(2). See, e.g., United States v. Cureton 739 F3d 1032 (7ᵀᴴ Cir 2014); United States v. Spiller 261 F3d 683 (7ᵀᴴ Cir 2001). It is also evidence of Decker's intent in causing emotional distress, as when he threatened to assault my daughter if he is released if I don't change my statements about his crimes. As such, this is a "vital" element of the battery and intentional infliction of emotional distress claims against Decker.

13.) There is also a question here of the knowledge and motives of the United States, its agents and officers in aiding and abetting if not also directing Decker's acts. Decker stated to me he was working with the US Attorney's Office and that they wanted my cooperation against Matthew Hale. If this wasn't at the direction of the United States, how did he know the FBI was, in fact, seeking my cooperation against Hale? If it was a lucky guess, why did another inmate communicate an identical offer to me December 29, 2021? Why was I placed on a housing unit with an inmate subject to a separation order with me? If this was negligence, why did the BOP do the same thing two years earlier when they moved Hale onto my unit? Why, after Decker clearly assaulted me, did the BOP target me for retaliation - false incident reports, horrendous

-7-

SHU conditions, the false statement that I "refused" to pay a fine, while the BOP attempted to reward Decker by returning him to the unit? Why was Decker permitted to shout obscenities and threats at me for four months, trying to influence my testimony? In this matter, the BOP worked with Decker to harm me and try to influence my testimony, and this is in the context of years of the BOP, FBI and USAO demand that I change testimony about Matthew Hale to enable a prosecution of him for racketeering and murder. So, showing why Decker acted is "vital" to showing the motives of the United States, its officers and agents.

Because Decker's motion is procedurally improper and fails on the merits, it should be denied.

Respectfully Submitted,

William A White # 13888-084
FCI-Cumberland
PO Box 1000
Cumberland, MD 21501

CERTIFICATE OF SERVICE

I hereby certify that this Response was mailed to the Clerk of the Court and Robert K Decker, 1st Class Postage Prepaid, this 24th day of April, 2023. The United States and Federal Bureau of Prisons will be served when they appear.

-8- William A White