# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM A WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:22-cv-02405-TWP-TAB |
| | ) |
| ROBERT KENNETH DECKER, | ) |
| UNITED STATES OF AMERICA, | ) |
| FEDERAL BUREAU OF PRISONS, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON PENDING MOTIONS

This matter is before the Court on several motions filed by Plaintiff William White ("White") and Defendant Robert Decker ("Decker"), as well as several objections made by White in this case. White, an inmate in the custody of the federal Bureau of Prisons ("BOP"), is currently housed at the Federal Correctional Institution in Cumberland, Maryland. He is pursuing multiple claims against three different Defendants, related to the time when he was housed at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"). He brings claims against (1) Decker, who was a BOP inmate but has now been released and resides in Detroit, Michigan; (2) the United States of America; and (3) the BOP. (Dkt. 75). In this Order, the Court resolves the pending motions in Dkts. 131, 166, 167, 168, 224, 228, and 234, as well as several objections.

## I. DISCUSSION

As relevant to this Order, White alleges that Decker told FCI Terre Haute staff that he would assault White if White were transferred there. Despite this knowledge White was transferred to Terre Haute and following his arrival, Decker punched White. After the altercation, a correction

officer sprayed White in the face with a chemical agent for no reason, and correctional staff then delayed White access to medical care for the side effects of the chemical agent. (Dkt. 75).

The Court will address the numerous objections and motions in the sequence that they were filed.

A. **White's Objection to the Magistrate Judge's Order at Dkt. 58** (Dkt. 61)

White has filed an objection to an order signed by the Magistrate Judge on September 22, 2023, which discussed numerous motions related to the parties' failure to serve each other copies of court filings. (Dkt. 58). White moved to strike some of Decker's filings—including his Answer—because Decker allegedly did not serve them on White. (Dkts. 18, 34, 36). White also asked the Court to enter a clerk's default against Decker based on the theory that Decker's Answer should be stricken, which would result in a failure to respond to the Complaint. (Dkt. 37). The Magistrate Judge denied the motions to strike because it was "not clear that the alleged failure to serve these filings can be attributed to Decker" and White "has not demonstrated any prejudice from the alleged lack of proper service." (Dkt. 58 at 2). The Magistrate Judge also ordered the BOP "to notify the Court within 21 days of the issuance of this Order whether and how White and Decker may serve each other with filings in this action." *Id.* at 3. The Magistrate Judge denied the motion for default because it was predicated on White's motion to strike Decker's answer, which had been denied. *Id.* Finally, the Magistrate Judge denied as unnecessary White's motion requesting service of the Complaint on Decker because service had been completed. *Id.*

White objects to the denial of the motions to strike and the motion for default, arguing, "[i]t appears that the Magistrate is trying to resolve the service issue. However, if this is not resolved, my motions are correct for the reasons given in the motions." (Dkt. 61 at 1). White also objects to

the denial of his motion for Marshal service and argues that "the Court lacks discretion to waive

these fees and must assess them against Decker." *Id* at 2.

### 1. Legal Standard

A district court may refer for decision a non-dispositive pretrial motion to a magistrate

judge under Federal Rule of Civil Procedure 72(a). Rule 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a
> magistrate judge to hear and decide, the magistrate judge must promptly conduct
> the required proceedings and, when appropriate, issue a written order stating the
> decision. A party may serve and file objections to the order within 14 days after
> being served with a copy. A party may not assign as error a defect in the order not
> timely objected to. The district judge in the case must consider timely objections
> and modify or set aside any part of the order that is clearly erroneous or is contrary
> to law.

After reviewing objections to a magistrate judge's order, the district court will modify or

set aside the order only if it is clearly erroneous or contrary to law. The clear error standard is

highly differential, permitting reversal of the magistrate judge's ruling only when "the district court

is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung

Heavy Indus. Co*., 126 F.3d 926, 943 (7th Cir. 1997). "To be clearly erroneous, a decision must

strike [the court] as more than just maybe or probably wrong," and the court will not modify a

magistrate judge's non-dispositive, pretrial decision "simply because [it has] doubts about its

wisdom or think[s] [it] would have reached a different result." *Parts & Elec. Motors, Inc. v. Sterling

Elec., Inc*., 866 F.2d 228, 233 (7th Cir. 1988). "An order is contrary to law when it fails to apply

or misapplies relevant statutes, case law, or rules of procedure." *Coley v. Landrum*, No. 14-cv-

00956, 2016 WL 427518, at *1 (S.D. Ind. Feb. 4, 2016) (citation and quotation marks omitted).

*Eli Lilly & Co. v. Arch Ins. Co*., No. 113CV01770TWPTAB, 2024 WL 1256000, at *3 (S.D. Ind.

Mar. 22, 2024).

### 2. Analysis

The undersigned concludes the Magistrate Judge's order is not clearly erroneous or contrary to law. As to the denials of the motions to strike and of the motion for default, White does not argue that the Magistrate Judge's decision was wrong. Rather, he argues that if the order directing the BOP to explain how he and Decker could serve each other with case-related documents did not solve the service issue, he would then be entitled to the relief that he requested in the motions that the Magistrate Judge denied. But shortly after the Magistrate Judge's ruling, counsel for the BOP and the United States (collectively, "the Government Defendants") filed a notice to the Court, outlining the procedure through which White and Decker could send communications through the federal prison mailing system. (Dkt. 62). Since that time—although the parties have experienced delays in receiving mail—there have been no suggestions that White was not receiving copies of Decker's filings based on Decker's failure to send them to White.

As to the request for Marshal service, White appears to be arguing that the Magistrate Judge was required to order that Decker be served by the United States Marshal Service and charge Decker a fee for such service. The Magistrate Judge was correct that the request was unnecessary because by the time the Magistrate Judge ruled on the motion, such service had already been accomplished. (*See* Dkt. 30).

As to the issue of charging Decker for service, the Court sent Decker a request to waive service under Federal Rule of Civil Procedure 4(d)(1). (Dkt. 11). Decker elected not waive service. Rule 4(d)(2) provides that if a defendant "fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States," the court must charge the defendant the expenses incurred in making service. White, of course, did not incur any expenses in making service because service was at the expense of the United States, (*see* Dkt. 21). Accordingly, the

Court need not charge Decker for service. Regardless, the record is silent as to why Decker failed to return the request to waive service. The record is replete with filings related to both White's and Decker's inability to send and receive mailings related to this case because of their placement in BOP Communications Management Units, so it is not clear that Decker received the request and failed without good cause to return it. The Magistrate Judge's failure to charge Decker for the costs of Marshal service was not clearly erroneous or contrary to law. White's objection to the Magistrate Judge's September 22, 2023, Order, (Dkt. 61), is **overruled**.

**B.  Decker's Motion for Sanctions (Dkt. 110)**

On September 3, 2024, the Court ordered the parties to refrain from making derogatory statements about one another, stating that it "expects the parties to refrain from mentioning [Decker's] convictions on a routine basis or making other irrelevant derogatory statements about each other." *Id.* at 5-6. On September 13, 2024, the Court received a motion for protective order from White in which he mentioned Decker's convictions. (Dkt. 109). The certificate of service on that motion indicates that it was mailed on September 9, 2024. *Id.* at 4.

On September 23, 2024, the Court received a notice from White dated September 18, stating that he did not receive the Court's September 3 Order until September 17, 2024 and apologizing for any excessive rhetoric. (Dkt. 111). That same day the Court received a motion for sanctions from Decker, in which he asks the Court to sanction White for referring to his convictions and continuing to make irrelevant derogatory remarks about him. (Dkt. 110). Decker's motion is dated September 20, 2024. *Id.* at 3. Decker attached a settlement communication that White sent to him and counsel for the other defendants, in which White made statements that Decker considers to be antisemitic. (Dkt. 110-1 at 4–7).[1] That letter is dated September 7, 2024. *Id.* at 4.

---

[1] It is not clear to the Court that the remarks Mr. Decker is referring to were directed at him, as opposed to the other defendants. Regardless, the Court does not need to resolve that issue to resolve this motion.

In response to the motion, White states under penalty of perjury that he did not receive the September 3 Order until September 17, 2024. (Dkt. 113-1). White's response is uncontested and is consistent with the timing of his notice to the Court about when he received the Order—which was mailed before he had seen Decker's motion for sanctions. White's statement is also consistent with the mail delays that he has experienced throughout this case due to his placement in a Communications Management Unit. On this record, the Court concludes that White had not received the September 3, 2024 Order when he made the statements at issue in Decker's motion, so the Court declines to sanction White for violating that Order.

Accordingly, Decker's motion for sanctions, (Dkt. 110), is **denied**. Going forward, however, the Court reminds the parties that they should endeavor to be civil in their Court filings, avoid unnecessary mentions of Decker's convictions, and refrain from irrelevant derogatory statements about each other.

### C.  <u>White's Objection to Order at Dkt. 122</u> (Dkt. 131)

White has filed an objection to the Magistrate Judge's December 6, 2024, Order granting the Government Defendants' motion to take depositions, (Dkt. 122). In that Order, the Magistrate Judge allowed the Government Defendants to depose White at a date and time to be determined between counsel and his prison. *Id.* The Magistrate Judge also allowed the Government Defendants to depose Decker, stating that their counsel must arrange for White to participate in that deposition through written questions under Federal Rule of Civil Procedure 30(c)(3), if White chose to do so. *Id.*

In support of his objection, White complains that the Magistrate Judge ruled on the Government Defendants' motion without waiting for his response. He explains that when he received the Government Defendants' motion—which was filed on November 21, 2024—he

promptly mailed a response that was not received by the clerk's office until December 17, 2024. (Dkt. 131 at 1). White asks the Court to overrule the Magistrate Judge's ruling based on two arguments: (1) the Government Defendants should not be allowed to depose him because of their discovery violations and because their counsel did not try to coordinate any depositions with him; and (2) the Court cannot deprive him of the opportunity to participate in Decker's deposition in person and instead require him to participate by written questions. He argues that Rule 32(a)(1)(A) states that a deposition may be used against a party only if, among other things, the "party was present or represented at the taking of the deposition." *Id.* at 1-3.

The Magistrate Judge granted the Government Defendants' motion on December 6, 2024. S.D. Local Rule 7(3)(A) dictates that "[a]ny response is due within 14 days after service of the motion." The ruling on the Government Defendants' motion was made more than 15 days after it was filed with the Court, a day after White's response would have been due. Although White contends this delay in the receipt of his response was due to BOP mail issues, this does not render the Magistrate Judge's ruling clearly erroneous or contrary to law. The Magistrate Judge ruled appropriately and pursuant to the local rules. Moreover, the Court finds that the Magistrate Judge's decision to allow the Government Defendants to depose White and to require him to participate in Decker's deposition by written questions was not clearly erroneous or contrary to law.

Accordingly, this objection, (Dkt. 131), is **overruled**.

### D.   <u>White's Motions for Default Judgment</u> (Dkts. 166, 167)

On February 24, 2025, White filed a "Motion to Strike the Answers of and Enter Default Judgment Against Defendants United States of America and Federal Bureau of Prisons for Defiance of the Court's Orders of Doc 104 and Doc 139 Pursuant to Fed.R.Civ.P.37(b)." (Dkt. 166). Shortly thereafter, he filed a second Motion for Default Judgment against Decker. (Dk. 167).

In both motions, White argues that the Court should enter a default judgment against all Defendants as a sanction for failing to cure alleged deficiencies in their discovery responses and production. For the following reasons, White's motions are **denied**.

### 1. Legal Standard

White contends that the Court should enter default judgments, citing Federal Rule of Civil Procedure 37, the Court's inherent authority, and 28 U.S.C. § 1927 as supporting authority. Section 1927 provides that, if any attorney or person "so multiplies the proceedings in any case unreasonably and vexatiously," they may be required to satisfy the costs, expenses, and attorneys' fees reasonably incurred because of the conduct. 28 U.S.C. § 1927. "Vexatiously" is defined as either "subjective or objective bad faith." *Vega v. Chicago Bd. of Ed.*, 109 F.4th 948, 956 (7th Cir. 2024) (cleaned up).

Under Federal Rule of Civil Procedure 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery, the court may "issue further just orders," including "rendering a default judgment against the disobedient party." "Although there are no specific factors that a court must analyze to impose sanctions under Rule 37, courts generally consider the egregiousness of the conduct by evaluating the frequency and magnitude of the party's failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Britt Interactive LLC v. A3 Media LLC*, 2018 WL 1165861, at *3 (S.D. Mar. 5, 2018) (cleaned up) (citing *Rice v. City Chicago*, 333 F.3d 780, 784 (7th Cir. 2003)). Courts also may impose sanctions for discovery violations under their inherent authority if a party "willfully abuses the judicial process or litigates in bad faith." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). Regardless of the source of authority, any sanctions imposed "must be proportionate to the circumstances." *Id.* Factors relevant to

proportionality include "the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Id.*

Entering a default judgment is an extreme sanction and is appropriate under Rule 37 "only where there is a clear record of delay or contumacious conduct, where other less drastic sanctions have proven unavailing, or where a party displays willfulness, bad faith, or fault." *Id.* (cleaned up) (citing *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014)). A court may also enter a default judgment for discovery violations under its inherent authority, but only if it finds that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake. *Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 776 (7th Cir. 2016). The facts underlying a court's decision to enter a default judgment under Rule 37 or its inherent authority must be established by a preponderance of the evidence. *Id.* at 781.

### 2. Default Judgment of Government Defendants (Dkt. 166)

#### a. Video Files

First, White argues that the Government Defendants have not properly disclosed to him media file evidence he previously requested in discovery. (Dkt. 166 at 2-5). Prior to his requests for the files on November 7, 2024, the Government Defendants served fourteen password protected media files with privileged information as part of their initial disclosures. (Dkt. 171 at 4). The media files were served on a CD-ROM and they provided the password to White's case manager via email for easy access of the documents. *Id.* Shortly thereafter, White made formal requests for the media files arguing that they could not be opened in their CD-ROM format. *Id*. at 5. On December 10, 2024, the Government Defendants re-served the same files on a password protected USB drive with the password provided to White's case manager. *Id.* On January 31, 2025, White

requested that the Government Defendants serve the media files again in a .mpeg format because he could not access them in their native format. *Id.* at 6.

On February 24, 2025, White filed a motion for default, (Dkt. 166), and on February 26, 2025, the Government Defendants provided White the files converted into .mpeg format. White has not filed any further documents suggesting that he is unable to view the .mpeg files, so it appears that this dispute is moot. Regardless, the record does not show that the Government Defendants were acting in bad faith or otherwise acted in a way that would justify the extreme sanction of a default judgment, or any sanction at all. Although White contends that they needlessly created hurdles for him to access these documents, he has presented no evidence that providing this information via password protected CD-ROM or USB flash drives was atypical in any way as compared to how the Government defendants would normally produce video evidence.

White argues that because the files were "unreadable" on the BOP computer he attempted to access these files on, this evinces malfeasance. (Dkt. 166 at 5). However, White has not presented sufficient evidence for the Court to find that this media error can be attributed to the Government's bad faith. Instead, the record shows that the Government Defendants had difficulty getting the files to White in a format he could use, and they worked diligently to solve the problem. As such, sanctions are not warranted.

### b. Requested Documents

White also contends that the Government Defendants have not produced certain documents to him, as required by the Court's order directing the parties to produce certain documents as part of their initial disclosures (Dkt. 104), and the Magistrate Judge's January 17, 2025 order on two of his motions to compel (Dkt. 120). Specifically, White argues the Government Defendants should be defaulted because they have not produced the following to him: (1) medical records related to

the battery that forms the basis of his claims against Decker; (2) records related to conditions in the Special Housing Unit ("SHU") in FCI Terre Haute's Communications Management Unit ("CMU"); (3) records related to the handling of his property; (4) federal register documents related to 28 C.F.R. § 541.3; (5) records related to the "Warden's determination made under BOP PS5270.11 § 12 and 28 C.F.R. § 541.31"; (6) the FOIA-exempt portions of his and Decker's Central Files; and (7) his or Decker's "CTU/CMU" files. *Id.* at 5-6.

White asserts that the order requiring the Government Defendants to produce certain categories of documents with their initial disclosures and the Magistrate Judge's January 17, 2025 order required them to produce the documents specified above. *Id.* at 3-4. Thus, they should be sanctioned for failing to comply with those orders. But this assertion is incorrect. The January 17, 2025 order did not require the Government Defendants to produce the documents listed above. It required the Government Defendants to supplement their initial disclosures within 14 days. (Dkt. 139 at 2). As part of their initial disclosures, the Government Defendants were required to produce only documents "*related to*" or "*relevant to*" White's claims in this case. (emphasis added) (Dkt. 104 at 2-3).

As the Government Defendants argue in their response, much of what White is seeking relates to his belief that the Government Defendants have engaged in a large-scale conspiracy with Decker and other matters not relevant to the claims at issue in this case. (Dkt. 166 at 2; Dkt. 171 at 14). There is no suggestion that the Government Defendants have withheld any relevant documents from White, let alone that their failure to do so amounts to bad faith or other conduct that would justify the extreme sanction of entering a default judgment against them or any sanction at all. Accordingly, no sanctions are warranted for this act.

### c. Witness Disclosures

The Court ordered the Government Defendants to provide the following with their initial disclosures: "The names and working addresses of the persons with knowledge of the relevant incidents . . . . " (Dkt. 104 at 2). White contends that the Government Defendants should be sanctioned for violating that direction because "the federal defendants disclosed 11 witnesses. By scouring the limited documents available, I have disclosed 48 witnesses, almost all known to the federal defendants. Only 6 of the witnesses overlap meaning the federal defendants have not disclosed about 40 witnesses known to them." (Dkt 166 at 6-7). This argument is meritless. The fact that White thinks that there are more potential witnesses does not show that the Government Defendants' disclosure demonstrates bad faith, malfeasance, or other conduct that would warrant sanctions, let alone the extreme sanction of entering a default judgment. Moreover, White was able to identify his additional witnesses by examining documents, suggesting that he has not suffered any prejudice due to the alleged failure to list the additional witnesses at issue.

### d. Deposition Notice

White also argues that the Government Defendants should be sanctioned because they failed to properly notice his deposition. Specifically, he argues that they did not serve the deposition notice until February 10, 2025, which was less than 14 days before his deposition, thereby violating Southern District of Indiana Local Rule 30-1(d). (Dkt. 166 at 7). He attaches a copy of the deposition notice "and the FCI-Cumberland date stamp of February 10, 2025." *Id.* White also complains that the Government Defendants did not serve Decker with the deposition notice or give him a chance to participate in the deposition. *Id.*

As to the first point, the Court has reviewed the deposition notice attached to White's motion, and does not see the "February 10, 2025" date stamp referenced in White's motion. (Dkt.

116-1 at 50-52). Moreover, as the Government Defendants argue, White clearly had actual notice of the deposition date on February 3, 2025, when he signed the certificate of service on his "Motion to Direct the Clerk to Properly Caption Doc 131," which states, "The federal defendants wish to depose me on February 20, 2025 . . . . " (Dkt. 159 at 2). February 3 was more than 14 days before the February 20, 2025 deposition date.

In addition, White has no standing to object that Decker did not get a copy of the deposition notice. He also does not explain how the failure to include Decker in the deposition prejudiced him, and the only person who could possibly be prejudiced would be Decker, who would lose the chance to ask White questions.

Considering these factors, the Court cannot say that the Government Defendants' deposition notice was defective. And, even if it suffered from some technical defects, White has not shown that those defects amount to the type of misconduct that justify the imposition of sanctions.[2]

### e. Frivolous Objections and Filings

Finally, White argues that the Government Defendants have leveled frivolous objections and filings, refused to resolve discovery disputes, and obstructed his legal mail. In regard to the issue of legal mail, this Court has addressed White's difficulty with receiving mail numerous times. (Dkts. 58, 81, 108). Unfortunately, the nature of correspondence in a federal facility often requires delays due to screening requirements. The usual mail difficulties were compounded because White is housed in a Communications Management Unit, which carries additional mail screening requirements. When necessary, this Court has resent filings and extended deadlines when needed.

---

[2] The Court also notes that, after White filed his motion for default judgment, he asked the Court to terminate his deposition, again raising arguments about defects in the deposition notice. (Dkt. 172). The Magistrate Judge rejected his arguments, (Dkt. 177), and the Court agrees with the Magistrate Judge's analysis, as discussed below.

In addition, White has provided no evidence that any delays have occurred because the Government Defendants were acting in bad faith or otherwise engaging in conduct that would justify sanctions. As to White's other qualms with the Defendants' discovery practices and filings, the Court finds that some of White's accusations are unfounded and, regardless, he has not proven that the Defendants' objections and filings rise to the level of bad faith or conduct that would justify sanctions. Rather, the record shows that the Government Defendants have meaningfully and frequently engaged in discovery and attempted to comply with White's numerous and voluminous discovery requests. (*See generally* Dkt. 171).

### 3. Default Judgment Against Decker (Dkt. 167)

White also argues Decker's failure to respond to discovery requests warrants a default judgment against Decker. (Dkt. 167). On February 3, 2025, the Court ordered Decker to provide updated interrogatory responses to White within fourteen days. (Dkt. 147). The order was mailed to Decker that day. At that time, White was incarcerated in the Communications Management Unit at the United States Penitentiary in Marion, Illinois ("USP Marion"). About three weeks after the Order was mailed to Decker—and only two days after White filed his motion for default judgment—Decker was released from USP Marion and began re-entry housing in Detroit, Michigan. (Dkt. 171 at 8). Decker was then ordered to update his address. (Dkt. 177). The Court appreciates that Decker has not responded to the motion for default judgment or explain why he did not respond to the discovery requests, but given the timing, he almost certainly did not receive a copy before his release from USP Marion. Given the documented history of mail delays in this case, White has not shown by a preponderance of the evidence that Decker's failure to respond was done in bad faith or other sanctionable conduct on the part of Decker.

In summary, White's motions asking the Court to enter default judgments against the Government Defendants and Decker, Dkt. [166] and [167], are **denied**.

### E.  Motion to Reconsider Dkt. 146 (Dkt. 168) and Objection to Dkt. 146 (Dkt. 169)

Next, White asks to reconsider the Magistrate Judge's February 3, 2025, order denying one of his motions to compel. (Dkt. 168).  Specifically, White objects to the Order at docket 146, which denied the motion to compel at docket 134. (Dkt. 169). White argues that the Court should reconsider its ruling because it erroneously denied his motion to compel without thoroughly reviewing his motion to supplement, which is in the record as docket 140. (Dkt. 168 at 2). White's original motion to compel, filed on January 3, 2025, asked the Court to compel the Government Defendants to respond to the requests for production that White sent on November 13, 2024. (Dkt. 134). At the time of his filing, White had not received any responses to his requests. Shortly thereafter, the Government Defendants responded and noted that they had sent responses to White. (Dkt. 138).

On January 17, 2025, White filed a twenty-three-page motion to supplement his previous motion to compel where he noted that he had now received the responses from the Government Defendants but found their answers and objections to be insufficient for various reasons. (Dkt. 140). About two weeks later, the Magistrate Judge denied White's original motion to compel by marginal entry due to the Government Defendants' contention in docket 138 that they had responded. (Dkt.  146).  On February 13, 2025, the Magistrate Judge denied White's motion for leave to supplement by marginal entry. (Dkt. 156).

District courts may reconsider interlocutory orders at any time before final judgment. *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018); *see also* Fed. R. Civ. P. 54(b). Motions to reconsider are, however, "not replays of the main event." *Dominguez v. Lynch*,

612 F. App'x 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)). Their function is limited to correcting "manifest errors of law or fact" or presenting "newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* at 1269–70. And, as stated above, the Court may set aside a magistrate judge's order on a pretrial motion only if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

Although White contends that the Magistrate Judge erred by prematurely resolving his motion to compel, the decision was not erroneous. The stated reason for denying the motion to compel—that the Government Defendants had sent the discovery responses at issue—was correct. White's "motion to reconsider" is not actually a motion to reconsider the Magistrate Judge's decision on that point. It is an argument that the Court should have considered the motion to compel and the motion to supplement at the same time. But the motion to compel and the motion to supplement addressed two completely separate issues (a failure to respond vs. alleged deficiencies with the responses), and therefore, the second motion was not supplementary—it was a whole new motion. The cases White cites to support his motion to reconsider do not evince that it was an error to consider a supplemental motion independent of the original motion. Moreover, the relief White requests—that the Court reopen his motion to compel so that the arguments in his motion to supplement can be considered—would not help him because as discussed below, the Court considered and rejected those arguments in a separate order.

For these reasons, White's Motion To Reconsider the Court's February 3 order, Dkt. [168], is **denied**, and his objection to that order, Dkt. [169], is **overruled**.

16

### F.  White's Objection to Dkt. 156 (Dkt. 169)

As explained, White filed a motion to supplement in which he detailed a number of alleged deficiencies with the Government Defendants' discovery responses and asked the Court to compel production of certain documents. (Dkt. 140). The Government Defendants responded to the motion and addressed his arguments in detail. (Dkt. 145). The Magistrate Judge denied the motion to supplement by marginal entry on February 13, 2025, noting that there was no pending motion to supplement and that, regardless, "for the reasons set forth in Defendants' response at docket 145. Plaintiff is not entitled to relief in any event." (Dkt. 156). White objects to that ruling. (Dkt. 169). The objection is **overruled**. The Court has reviewed White's motion to supplement and the Government Defendants' response and agrees with the Magistrate Judge that White was not entitled to the relief requested.

### G.  White's Objections to Dkt. 177 (Dkts. 193, 196 and 198)

White has filed three separate objections to the Magistrate Judge's March 26, 2025, Order. (Dkt. 177).  The Court addresses them separately, below.

#### a.   Objection to Denial of Deposition Subpoenas (Dkt. 193)

White's first objection to the March 26, 2025 order targets the Magistrate Judge's denial of his request for 10 deposition subpoenas. The discovery deadline in this case was February 26, 2025. (Dkt. 104). On December 23, 2024, White filed a motion asking for 10 deposition subpoenas. (Dkt. 128). On January 17, 2025, the Magistrate Judge denied the motion without prejudice, explaining:

> As a *pro se* litigant, Plaintiff may depose witnesses, whether by oral examination under Federal Rule of Civil Procedure 30 or by written question under Rule 31; however, Plaintiff must arrange for an officer to conduct the deposition consistent with the Federal Rules of Civil Procedure and pay any costs associated with the deposition. See Moore v. Cromwell, Case No. 17-cv.122-pp, 2018 WL 6602220, *4 (E.D. Wis. Dec. 17, 2018) ("[I]f the plaintiff wants to depose the defendants'

witnesses, the plaintiff must make these arrangements. Most incarcerated plaintiffs can't hire and pay for a court reporter to set up a deposition. That is why they use other tools to get the information they want."). Plaintiff's motion does not explain what arrangements Plaintiff has made or intends to make to take and pay for such a deposition. Accordingly, the motion [Filing No. 128] is denied without prejudice.

(Dkt. 139 at 3). In the same order, the Magistrate Judge denied White's motion to extend the discovery deadline. *Id.*

White did not receive the order until February 3, 2025. (Dkt. 161 at 5-6). On that date, he filed a motion to reconsider that addressed the denial of the subpoenas but also the decision. (Dkt. 163). He also filed a motion to reconsider the decision to deny his request to extend the discovery deadline. (Dkt. 161). As to the denial of the request for the subpoenas, White explained that he had the funds to take the depositions, had a relationship with a court reporter, and he set forth what arrangements he would make to take them. (Dkt. 163). The Magistrate Judge denied the motion to reconsider on March 26, 2025, because White was "merely seeking to re-litigate matters previously decided adverse to him, which is not a proper reason to grant a motion to reconsider" and "sets forth no valid basis to reconsider the Court's earlier rulings on these matters." (Dkt. 177). White then objected to the March 26 Order, arguing that the Magistrate Judge could not require him to provide information about his plans for deposing witnesses. (Dkt. 193).

Upon review, the Court finds that the Magistrate Judge's decision to deny White's request for reconsideration of the subpoena issue was not clearly erroneous or contrary to law. Although his explanation of his ability to take the depositions was likely adequate, White did not file a timely Rule 72 objection to the original order denying without prejudice the motion for subpoenas, despite asking for and being granted more time to file such an objection. (*See* Dkt. 148, 151). As a result, the Court cannot now revisit whether the Magistrate Judge erred in requiring him to provide information about his plans for deposing witnesses. Instead, the Court can only review whether

18

the Magistrate Judge erred when he refused to give White the requested deposition subpoenas after White filed the motion to reconsider.

White mailed the Motion to Reconsider on February 3, 2025, and the Court did not receive it until February 19, 2025, just a week before discovery closed. At that point, even if the Magistrate Judge had sent White the requested subpoenas, it was practically too late for him to take any depositions unless the discovery deadline was extended. *See, e.g.*, S.D. Ind. Local Rule 30-1(d) (requiring 14 days of notice for depositions in most cases). Thus, the propriety of the Magistrate Judge's decision to deny the deposition subpoenas in response to the motion to reconsider hinges on his contemporaneous decision to deny White's request to extend the discovery deadline. As explained below in connection with White's objection to that decision, the Court finds that the decision to deny the request to extend the discovery deadline was not clearly erroneous or contrary to law. As a result, the decision to deny White the requested subpoenas was also not clearly erroneous or contrary to law. Accordingly, this objection to the March 26, 2025 order is **overruled**.

### b. White's Objection to Denial of Request to Terminate Deposition (Dkt. 196)

The Government Defendants scheduled White's deposition for February 20, 2025. White appeared for the deposition, made several objections on the record based on alleged inadequacies in the deposition notice, and refused to answer questions. (Dkt. 172). When counsel tried to ask questions, White suspended the deposition and left. *Id.* He then filed a motion asking the Court to "terminate the deposition and for sanctions," citing Federal Rule of Civil Procedure 30(d)(3), which allows a party to move to terminate or limit a deposition because it "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Id.* In the March 26, 2025 Order, the Magistrate Judge denied White's motion, explaining that "Defendants attempted to conduct Plaintiff's deposition in good faith, and Plaintiff's refusal to

participate in his deposition does not warrant sanctions against Defendants." White objects to this decision, again raising arguments about alleged defects in the notice of deposition. (Dkt. 172). Upon review, the Court finds that the Magistrate Judge's denial of this motion was not clearly erroneous or contrary to law. The case White relies on to support his position—*Evans v. Griffin*, 932 F.3d 1043 (7th Cir. 2019)—is distinguishable and inapplicable.[3] Accordingly, the objection to the March 26, 2025 order is **overruled**.

### c. White's Objection to Denial of Request to Extend Case Management Deadlines (Dkt. 198)

As stated, the discovery deadline in this case was February 26, 2025. On December 16, 2024, White filed a motion asking the Court to extend the remaining case management deadlines by 120 days, citing various factors, including the pendency of a motion for protective order, the Government Defendants' alleged failure to comply with their initial disclosure obligations, the BOP's alleged efforts to obstruct his ability to communicate with his expert witness, the fact that he had discovery requests outstanding that would likely be the subject of motions to compel, his need to serve paper discovery once he communicated with his expert, and his need to do more discovery so that he could determine which witnesses he wanted to depose. (Dkt. 124). The Magistrate Judge denied the motion, stating that discovery remained open until February 26. (Dkt. 139). White did not file a Rule 72 objection to that order. Instead, he moved for reconsideration, again arguing that he needed more time to do discovery, including the depositions that he was not able to take because his motion for deposition subpoenas was denied without prejudice. (Dkt. 161).

---

[3] In *Evans*, the plaintiff failed to appear for his deposition, and the district court dismissed his case with prejudice as a sanction. On appeal, the Seventh Circuit made some comments in dicta about whether a deposition notice would be timely served if it reached the deponent too late to allow for adequate preparation but ultimately held that the district court should not have dismissed the case with prejudice because there was no notice that the plaintiff had actual notice of the deposition before the date for which it had been noticed. *Evans*, 932 F.3d at 1047-48. Here, White contends that he did not receive the deposition notice until 10 days before the appointed date for the deposition and, as discussed above, the record clearly indicates that White knew about the deposition at least 17 days before the scheduled date.

The Magistrate Judge denied the motion to reconsider, reasoning that this was not an exceptional case that required consideration, White was improperly trying to re-litigate matters previously decided adverse to him, and White set forth no valid basis to reconsider the Court's decision. (Dkt. 177). White objects to that decision, arguing that the Magistrate Judge improperly applied the standard to obtain relief under Federal Rules of Civil Procedure 59(e) or 60(b), rather than relying on Rule 54(b), which allows for an interlocutory order to be revised at any time for good cause *Id.* at 8. He also complains that the Magistrate Judge did not discuss whether there was good cause for his requested extension in the original order denying the motion for extension of time or the order denying the motion for reconsideration. *Id.*

As with the issue relating to the deposition subpoenas, White did not file a Rule 72 objection to the original order denying his motion to extend the case management deadlines, despite explicitly asking for and being given more time to do so. (Dkts. 141, 151). As a result, the Court cannot review that original decision. Instead, it is limited to reviewing the denial of the motion to reconsider that he did file.

As to that decision, White is correct that the Magistrate Judge mentioned the standard for ruling on motions under Rules 59(e) and 60(b) and did not specifically mention Rule 54(b). (Dkt. 177 at 2). But the standard for reconsidering an interlocutory order under Rule 54(b) and the standard for considering a Rule 59(e) motion are "largely the same." *See Katz-Crank v. Haskett*, No. 1:13-cv-00159-TWP-DML, 2014 WL 3507298, at *2 (S.D. Ind. July 14, 2024) (cleaned up) (quoting *Woods v. Resnick*, 725 F. Supp. 2d 809, 827 (W.D. Wis. 2010)). As explained above, similar to a Rule 59(e) motion, a motion seeking relief under Rule 54(b) is not the place to rehash arguments previously rejected and corrections under Rule 54(b) are limited to correcting manifest errors of law or fact or presenting newly discovered evidence. As a result, the Magistrate Judge's

21

denial of the motion to reconsider was not clearly erroneous or contrary to law based on the reference to Rules 59(e) and 60(b). And, as to the complaint about the failure to mention whether there was good cause for the requested extensions, as stated, the Court cannot review the Magistrate Judge's original denial of the motion to extend the deadlines. And, even if it could, that denial implicitly suggested that there was not good cause for the requested extension because ample time remained to complete discovery. The Court cannot say that that determination was clearly erroneous or contrary to law.

As such, this objection to the March 26, 2025 Order is **overruled.**

### H.  White's Motion for Additional Discovery (Dkt. 224)

On June 30, 2025, White filed a motion for more discovery under Federal Rule of Civil Procedure 56(d).  Under that rule, if a party opposing a summary judgment motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a summary judgment motion, the court may, among other things, "allow time to obtain affidavits or declarations or to take discovery" or "issue any appropriate order." Fed. R. Civ. P. 56(d)(2)-(3). To meet the Rule 56(d) burden, the party moving for relief must show good cause for the discovery delays, that the specific discovery is necessary to prepare a summary judgment response and that the additional discovery will give rise to a genuine issue of material fact. *Volvo Trucks N.A. v. Andy Mohr Truck Center*, No. 1:12-cv-00448-WTL-DKL, 2013 WL 12284628, at *1 (S.D. Ind. Dec. 1, 2013). This burden "requires more than a fond hope that more fishing might net some good evidence." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019).

In support of his motion, White provides a litany of complaints about the Government Defendants' conduct in discovery and the Court's handling of this case, including raising some issues that have been previously decided by the Court in this order and others. (Dkt. 224). He then

provides nine "general areas" where he has been unable to fully and fairly present his claims. *Id.* at 9-10. White concludes by identifying 14 factual statements from the Government Defendants' summary judgment motion that he alleged cannot fully and fairly confront due to the lack of proper discovery. *Id.* at 10-11. The Government Defendants responded and offered detailed arguments why White had failed to meet his burden under Rule 56(d). (Dkt. 230). In reply, White argued as follows:

> I have detailed in my Motion for Additional Discovery (Doc 224) and in my response to the federal defendants' motion for summary judgment (Doc 203) (Doc 226) how the federal defendants' refusal to obey the discovery rules and the Court's Orders (Doc 104, 139), have prejudiced me. *The only question is whether or not the Court intends to enforce the rules.* The federal defendants' misconduct in this matter and their continued false statements and efforts to disrupt this proceeding have been egregious and deliberate and calculated to make a mockery of this proceeding and bring the legal process into disrepute. I hope the Court rules appropriately.

Dkt. 233 at 2 (emphasis added).

At the outset, the Court notes that Decker has not moved for summary judgment, so White is not entitled to more discovery as to his claims against Decker under Rule 56(d). As to his claims against the Government Defendants, White's contention that he is unable to fully and fairly present his case as to many issues are contradicted by the fact that he moved for summary judgment on Counts VI, VII, VIII, and IX of the operative complaint. White has competently presented briefing on his claims against the Government Defendants for trespass to chattels; and violation of the Administrative Procedure Act for assessing a monetary fine, denying him access to newspapers and magazines, and finding him guilty of disciplinary charges.[4] (*See* Dkt. 75, 189). He also

---

[4] In addition, as a *pro se* plaintiff, White's pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2008).

indicates that he will drop his Rehabilitation Act claim, (Dkt. 224 at 13), so he does not need more discovery as to that claim.

Regardless, the Court agrees with the Government Defendants' arguments as to why Decker has not met his Rule 56(d) burden as stated in their response to the motion. (*See generally* Dkt. 230). In his Reply to Doc 230, White makes no effort to explain why those arguments are incorrect. Instead, he simply falls back on the objections he has raised to the Government Defendants' conduct of discovery in other filings. (Dkt. 233). Put another way, he hitches his Rule 56(d) motion to the success of his other pending motions and objections about the Government Defendants' conduct in discovery. But, as explained in this order, the Court has now rejected all pending complaints about those issues.

Accordingly, White's motion for additional discovery, Dkt. [224], is **denied**.

**I.    White's Motion to Compel Production of Video (Dkt. 228)**

White filed a motion asking the Court to compel the Government Defendants to produce the video that he wants to use as Exhibit 26 to his summary judgment response, which the Court understands as a motion asking the Court to require the Government Defendants to file a copy of the video because he cannot do so. (Dkt. 228). The Government Defendants respond that they do not object to produce the media file identified in the motion but note that White gave a file name for the file that is nonexistent. (Dkt. 231). They state, however, that they believe that this was a typographical error and that they will file a copy of what they understand to be the requested file with their reply in support of their cross motion for summary judgment and give what they believe

to be the to be the proper file name. *Id.* White did not file a reply disputing that they had properly identified his request. Accordingly, the motion to compel, Dkt. [228], is **denied as moot**.

### J.  Decker's Motion to Extend Deadlines (Dkt. 234)

Finally, Decker filed a motion titled 'Notice of Motion to Change Contact Information, which the Clerk docketed as a Moton to Extend Deadlines. (Dkt. 234). In the  (Dkt. 234 at 1). In the motion, Decker gives notice of change to his address, email, phone number, and residence address; and states that he has been moved numerous times to "keep him away from his legal documents." *Id*. He requests that his address be updated as he has lost all his legal documents. *Id*. Decker's address has now been updated to his current mailing address he has noted in this filing. (Dkt. 235). He further asks the Court to reissue the past two Court orders so that he may "have a fair chance to respond to any motions that were filed by the defendant." (Dkt. 234 at 2). Decker's motion, Dkt [234], is **granted.** The **clerk is directed** to resend copies of the Court's last two orders, (Dkt. 212, and 225) to the new address identified on the docket.

### K.  <u>CONCLUSION</u>

For the reasons explained in this Order, White's objections, Dkts. [61], [169], [193], [196], [198] are **overruled**.  White's Motions to Reconsider, Dkts [166], [167], [168] are **DENIED.** His Motion for Additional Discovery, Dkt. [224] is **DENIED.**  His Motion to Compel Filing of a Video File, Dkt. [228], is **DENIED as moot**.

Decker's Motion for Sanctions, Dkt. [131], is **DENIED**. Decker's Motion to Extend Deadlines, Dkt [234], is **GRANTED.**  The **clerk is directed** to resend to Decker, copies of the Court's last two orders, (Dkts. 212 and 225).

Having resolved these ancillary motions and objections, the Court will address in due course, the dispositive summary judgment and related motions that remain pending.

**IT IS SO ORDERED.**

Date: 9/11/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

WILLIAM A WHITE
13888-084
CUMBERLAND - FCI
CUMBERLAND FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 1000
CUMBERLAND, MD 21501

ROBERT KENNETH DECKER
c/o Kpep
537 Chicago Ave.
Kalamazoo, MI 49048

All Electronically Registered Counsel